GORY GADDIS

*v.*

RICHLAND COUNTY.

1. MUNICIPAL CORPORATION—*derives all its powers from grant.* A municipal corporation can only exercise the powers conferred by the charter of its organization, and such powers must be by express grant or such as follow by reasonable implication as necessary to perform duties imposed or privileges conferred when the means of their accomplishment are not specified.

2. SAME—*power to create a debt or subscribe for stock in railroad.* The power to create a debt by a county, or to subscribe for stock in a railroad, or to issue bonds to raise money to aid in its construction, must be conferred by grant from the law-making power, and when the grant is made and the power is conferred, the authority must be substantially pursued.

3. SAME—*power of legislature to impose debts to be paid by taxation.* The 5th section of article 9 of the constitution of 1848 was a limitation on the power

of the legislature to impose a tax upon municipal corporations for corporate purposes, and prohibited that branch of the government from creating municipal indebtedness to be paid by taxation imposed on the property in such municipalities, unless the corporate authorities in some manner manifested their assent.

4. Same—*mode prescribed must be followed in execution of power.* The legislature, in conferring powers upon municipal corporations, may impose such terms and conditions as it chooses, and if a particular mode is prescribed in which a power shall be exercised, the municipality can not adopt a different one, or if the power is conferred on one set of officials or individuals, it can not act through or by a different set of officials or persons.

5. Municipal subscription—*election must be called by the proper authority.* Where power has been conferred upon the county court of any county, though the county may be under township organization, as the body to call an election upon the question of subscribing to the capital stock of a railroad company by the county, and which authority shall prescribe the conditions of the subscription, make the subscription and issue county bonds in payment thereof, that court can alone act in carrying out the power, and if the power is exercised by the board of supervisors or any functionaries other than such court, their acts will be simply void for want of power.

6. Same—*of the notice of the election.* Where notice of a special county election is not given by the proper officer upon whom the law has imposed that duty, but is given by another or different officer, the notice will be defective, and will not authorize the election when it is called to determine whether the county shall subscribe to the capital stock of a railroad company. It would be different if the election was a general one for the election of county officers held at the time prescribed by law.

7. Same—*when board of supervisors may act for county court.* Although the power conferred upon county courts, in relation to municipal subscriptions to railroads, by the general act of 1849, may, under that act, be exercised by the board of supervisors in counties afterwards acting under township organization, the rule does not apply to counties so organized where the authority is specifically conferred on the county court. When the power conferred is exercised by a tribunal or officer not authorized, it can not be said to be a defective execution of the power. That only occurs when it is exercised by the proper tribunal.

8. Same—*purchasers must take notice when bonds are void.* As a general rule, no person can acquire rights under a void instrument, and such is the case with forged paper, and public securities issued without authority. If county bonds are issued in payment of a subscription to a railway company without authority of law, they are void, and an innocent purchaser before their maturity acquires no rights under them to be protected. Such purchaser must look to the authority under which they purport to have been issued.

9. CONSTITUTIONAL LAW—*power of legislature to cure void proceedings.* Where an election on the question of municipal subscription to the stock of a private corporation is void, because called and ordered by persons not authorized to call the same, and consequently not a valid authority for the creation of corporate indebtedness or liability, the legislature is powerless, under the constitution, to validate such election by subsequent enactment, and require the issuing of bonds peremptorily. The effect of such legislation is to create a municipal indebtedness without the assent of the municipality.

10. STATUTE—*construction—prohibition by implication.* The expression of one thing or one mode of action in an enactment is generally held to be an exclusion of all other things or modes.

APPEAL from the Circuit Court of Richland county; the Hon. JAMES C. ALLEN, Judge, presiding.

Mr. R. S. CANBY, for the appellant.

Mr. J. M. LONGNECKER, and Mr. M. MILLARD, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought in the Richland circuit court, by appellant, against the county, to recover the money claimed to be due on a coupon of a bond executed by the chairman of the board of supervisors, under a resolution requiring him to issue the same. The bond was one of a series aggregating $200,000, bearing ten per cent interest per annum, three per cent of which was to form a sinking fund to pay the principal. The coupon was due when suit was instituted. It was payable to bearer and was owned by appellant.

To the declaration the county filed the plea of the general issue, and gave notice of special matter that would be relied on in defence. But it was such as could be given in evidence under the general issue, so far as it amounted to a defence. A jury was waived, and a trial had by the court, and the issues were found for the defendant, and, after overruling a

motion for a new trial, judgment was rendered against plaintiff for costs, and he appeals to this court and assigns errors.

It is stipulated by the parties that the main question is, whether the curative act of April 9, 1869, (Priv. Laws, vol. 3, p. 360,) is valid and sufficient to legalize the elections authorizing the board of supervisors to issue the bond in question. On an inspection of the record and arguments presented we find that the question of the constitutionality of the law referred to in the stipulation fairly arises in the decision of the case, and the appeal is properly prosecuted to this court.

On the 1st of March, 1867, an act was adopted amending the charter of the Grayville and Mattoon Railroad Company. The amendment authorizes counties to subscribe to its stock in a sum not exceeding $200,000. (Priv. Laws, vol. 2, p. 736.) That act, in its various sections, confers power on the county courts of the counties to subscribe for stock in the company in like manner and with like effect as was authorized by the act of November 6, 1849. But a subscription could not be made by the county court until sanctioned by a vote of the people of the county. The entire act refers to the county court as the body which shall call the election, prescribe the conditions, make the subscription and issue the bonds. The board of supervisors are not named or referred to in the act. The act of 1849 referred to, only confers power on county courts to call elections and subscribe for stock. If the power may be exercised under that act by the board of supervisors in counties afterwards acting under township organization, it would not apply to counties so organized when the authority is specifically conferred on the county court.

This county adopted township organization as early as in 1858, and has so continued ever since. An election was held in the county on the 7th day of April, 1868, to determine whether the county would subscribe $150,000 to the stock of the road. This election was ordered and the time was fixed by the board of supervisors, but the clerk gave no notice of an election; but notice of the time and place of holding the

election was given by the supervisor in each of the several townships. The election was held, and resulted in favor of the subscription.

On the 1st of December, 1868, under an order by the board for and a notice of an election, to determine whether the county would subscribe $50,000 more to the stock of the company, it was determined in favor of subscription.

The elections having been called and held under the direction of the board of supervisors, and not by the county court, an act of the General Assembly was adopted on the 9th of April, 1869, to cure irregularities in these elections and to render valid the steps taken to make the subscription and to issue the bonds.

Section 3 of that act, (Priv. Laws, vol. 3, p. 360,) provides, " that all elections held for the purpose of voting said stock, and the manner in which stock was voted, are hereby legalized in all respects, and said stock to be subscribed in the manner the same was voted." This is the provision which is claimed to be repugnant to the constitution.

All will concede that a municipality can only exercise the powers conferred by the charter of their organization, and such powers must be by express grant or such as follow by reasonable implication as necessary to perform duties imposed or privileges conferred, and the means of their accomplishment are not specified. This being a fundamental rule, it follows that the power to create a debt by a county or to subscribe to stock in a railroad, or to issue bonds to raise money to aid in its construction, must be conferred by grant from the law-making power, and when the grant is made and the power is conferred it must be substantially pursued. If a particular mode is prescribed the municipality can not adopt a different mode, and if the power is conferred on one set of officials or individuals, it can not act through or by a different set of officials or persons. The municipality have no discretion in executing the power, nor can they adopt a mode they deem better adapted to accomplish the end. The General Assembly

had the power to confer the authority or to withhold it, or, in conferring it, to impose such terms and conditions as they chose. It was an exercise of power by them in the government of the State, and that body were the sole judges as to the manner in which the power should be exercised, and the functionaries or individuals who should exercise it.

In this case the General Assembly conferred the power on the county court, and we must presume when the power was granted the General Assembly knew that this county was under township organization, and had a board of supervisors as well as a county court, and knowing that fact, we must conclude that body, for reasons satisfactory to themselves, intended to confer the power on the county court, and not on the board of supervisors. But if not apprised of the fact we can not say that, had it been known, the enactment would have been different. The expression of one thing or one mode of action in an enactment is usually held to be an exclusion of all other things or modes. The language is plain and unambiguous when it says the county court may call an election, subscribe for stock of the road and issue bonds as directed. The language neither requires nor admits of interpretation. No one can be in any, the least doubt of its meaning.

The power, then, having been conferred on the county court, it could alone act in carrying out the power. No other functionary, body or individual could act, simply for the want of power. See *Schuyler County* v. *The People*, 25 Ill. 181; *Marshall County* v. *Cook*, 38 id. 45; *Clarke* v. *Board of Supervisors*, 27 id. 305; *Force* v. *Town of Batavia*, 61 id. 99, and *Harding* v. *Rockford, Rock Island and St. Louis Railroad Co.* 65 id. 90. The first of these cases is in point, as the material facts of the two cases are similar and not distinguishable.

In the case of *Marshall County* v. *Cook, supra,* the county court acted in ordering the election when the power was vested in the board of supervisors. There, after the election had been held, the board then acted, and the bonds were issued

under and in pursuance of an order of the board, and it was held that the county court had no power to call the election, and the bonds thus issued were void. From the rule announced in these cases the bonds were issued without authority, and hence were void.

It is however urged, that there was in this case not a want of power, but a defective execution of the power by the board. That body acted without power,—they had no power to execute. Had the county court, which possessed the power, acted, and omitted to perform some specified act or duty, then there would have been power under which the county court was acting, but by reason of the omission it would be defectively executed. But here the board of supervisors had no power to execute, defectively or otherwise.

Again, in calling the first election, the notices posted by the several supervisors in their townships were wholly insufficient. The law had designated the county clerk as the officer to give notice of general or special elections. (See sections 46 and 47 of Election law.) This was a special county election, and the notice should have been issued and attested by the county clerk. The notice not having been given by the proper officer, it was defective, and did not authorize the election board to hold it. If it had been an election for officers, and the time for holding it designated by law, and notice had not been given, or given by an unauthorized person, it would have no doubt been otherwise. But here was a special county election; the time of the election, and the terms and conditions upon which the proposed subscription was to be made had to be fixed by the county court, and the voters should have been notified thereof in the manner prescribed by the statute. And as to the vote for the last $50,000, the board of supervisors, having no power to call the election, to fix the terms of the subscription, to subscribe for stock, or to issue bonds, the bonds, when issued, were void. See *Lippincott* v. *Town of Pana, ante,* p. 24.

It is however urged, that the bonds were negotiated before

due, to innocent persons, without notice, and they should be protected. As a general rule no person can acquire rights under a void instrument. Such is the case with forged paper, and paper issued without authority. Then, as these bonds were issued without authority, and void, the purchaser acquired no rights under them.

Again, the bonds on their face referred to the charter, the amendment thereto, and the curative act, by their dates. Had the purchaser turned to the acts he would have found that the county court alone had power to act under the law, and the bonds offered to him were issued without authority. Knowing, as he must be presumed to have known, that counties were powerless to create debts, and to issue bonds, unless specifically empowered, it was his duty to look to the act conferring the power, to see that it was being properly exercised. The bond itself referred him to the source of power, and he only had to turn to the law to see that the board of supervisors had no power to act in the premises. The bond being unauthorized and void, the county is not liable, unless rendered so by the act of April 9, 1869, which purports, as we have seen, to render those void elections valid.

The effect to be given to this act depends upon whether the General Assembly had, under the constitution, competent power to cure the vice in calling and holding these elections.

The fifth section of article 9 of the constitution of 1848 has been repeatedly held to be a limitation on the power of the General Assembly to impose a tax on property in these municipal bodies for corporate purposes, and to prohibit that branch of the government from creating municipal indebtedness, to be paid by taxation imposed on the property in such municipalities. This doctrine was announced in *Harward* v. *The St. Clair and Monroe Levee & Drainage Company*, 51 Ill. 130; *The People* v. *The Mayor of Chicago*, id. 30; *Hessler* v. *Drainage Commissioners*, 53 id. 110, *Lovingston* v. *Wider*, id. 302; *Marshall* v. *Silliman*, 61 id. 218, and *Wiley* v. *Silliman*, 62 id. 170.

The question of the power of the General Assembly to impose such debts or taxes was, in these cases, presented in various forms, and the power was denied, unless the corporate authorities in some manner manifested their assent.

In some of those cases the facts were so nearly similar to this case as to render them conclusive of this question, and renders further discussion unnecessary.

But does this law endeavor to impose a debt? We have seen the calling, the giving notice of, and the holding of these elections were unauthorized and void. It was the same as if no elections had been held to authorize the subscription.

Now, it will be observed that this curative act is compulsory. It is not that the elections are declared legal, and the board of supervisors may, if they should so elect, make the subscription in the manner the same was voted. But the language is: "That all elections held for the purpose of voting said stock, and the manner in which said stock was voted, are hereby legalized in all respects, and said stock to be subscribed in the manner the same was voted." This gives no discretion to the board, but requires the subscription, although contrary to the judgment and against the will of the members of the board. Had this requirement been made without any semblance of an election, all would see that it would have been to impose a debt on the municipality without its consent. And when it is remembered that these elections were held without power in the body ordering them, as they conferred no more power than if they had never been held, it is apparent that this subscription is as clearly unauthorized as if the legislature had recited that ten or any other number of citizens of the county had come together and voted to subscribe $200,000 to the stock of the road, and declared it a legal election, and commanded the board to subscribe for the stock and issue the bonds. It was, in legal effect, precisely as though no effort had ever been made to hold an election, and it gave no vitality to the bonds.

It is however urged, that a proceeding by *mandamus* was

instituted, and a judgment was rendered requiring the bonds to issue; that whilst that judgment was in full force, and in obedience to its command, the board of supervisors issued and delivered these bonds, and that the holder is thus protected, whether the bonds were legally voted or the board was authorized or empowered or not to issue them.

On turning to the transcript of the record we find the judgment of the court in a *mandamus* proceeding. But the petition or answer does not appear, and from the order of the court, or its recitals, we are unable to see that it was made in reference to these bonds. The caption to the order is: "The People, etc. *ex relatione* Railroad Company v. The County of Richland." The order recites that the parties appeared, and petitioner moved for a peremptory writ of *mandamus* against the defendant in pursuance of the prayer of the petition, and the motion was sustained. It is then ordered and adjudged that the writ issue commanding the chairman of the board of supervisors, and the county clerk, on receiving a certificate of stock for $100,000 in the Grayville and Mattoon Railroad Company, to issue bonds of the county to that amount, with interest coupons attached, to be of the form and in pursuance of the terms upon which the same were voted by the county to the railroad company.

There is no other reference to the election. It does not recite the time when held, or the manner in which it was held, or the terms and conditions of the vote; nor, in fact, does it refer to any matter or thing from which it may be inferred that it was the election at which these bonds are claimed to have been voted. The amount ordered to be issued does not correspond with either of the sums voted at these elections.

There is nothing in the record of that proceeding before us to show these bonds were issued under this order. We must therefore hold, that it fails to appear that this bond was issued under that order, and hence the question of the effect of that order upon this bond is not before us for decision, and we must decline its discussion until properly presented.

Perceiving no error in the record, the judgment of the court below must be affirmed.

*Judgment affirmed.*