### COUNTY OF KANKAKEE *v.* ÆTNA LIFE INSURANCE COMPANY.

1. The charter of the Kankakee and Illinois River Railroad Company does not limit the operation and effect of the general laws of Illinois, which confer power upon counties to subscribe for stock in railroad companies and issue bonds in payment therefor.
2. The county of Kankakee, in that State, having been organized under the act of April 1, 1851, to provide for township organization, it was the duty of its board of supervisors to discharge the duties enjoined by the general laws upon the county courts in those counties which did not adopt that organization.
3. The bonds issued by that board to pay for the subscription to the stock of that company are valid obligations of the county.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

The case is stated in the opinion of the court.

*Mr. Francis H. Kales* for the plaintiff in error.

*Mr. O. J. Bailey* and *Mr. James H. Sedgwick* for the defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The judgment sought to be reviewed by this writ of error was rendered upon coupons attached to municipal bonds purporting to be issued by the plaintiff in error.   The cause was tried by the court without the intervention of a jury, and the facts appear in a bill of exceptions.   Each bond of the issue bears date Sept. 20, 1870, and contains a recital that it "is issued under and pursuant to orders of the board of supervisors of Kankakee County, Illinois, for subscription to the capital stock of the Kankakee and Illinois River Railroad Company, as authorized by virtue of the laws of the State of Illinois authorizing cities and counties to subscribe capital stock to aid and

construct railroads; also in accordance with the provisions of an act of said State of Illinois entitled ' An Act to fund and provide for paying the railroad debt of counties, townships, cities, and towns,' in force April 16, A. D. 1869."

The bonds were sealed with the county seal, signed by the chairman of the board of supervisors, and countersigned by the clerk of the county court, under the order of the board of supervisors of the county, Sept. 20, 1870.

The defendant in error is a *bona fide* holder for value, having purchased them before their maturity in the open market and without notice of any defence.

The defence made, however, and overruled in the court below, is matter of law, and alleges that the bonds are void, in whosesoever hands, first, because the county had no power under the law to issue them at all, and, second, because they were issued by the board of supervisors of the county, who were not the representatives of the county empowered to bind it.

Section 16 of the charter of the Kankakee and Illinois River Railroad Company; in force April 15, 1869, provides that " to further aid in the construction of said railroad, townships, corporate towns, and cities on or along the line of said railroad may subscribe to the capital stock of said company in sums not exceeding one hundred thousand dollars respectively, " if such subscription shall have been authorized by a majority of the legal voters at an election called and held for that purpose. In that event, bonds of such township, corporate town, or city shall be issued in payment thereof to the railroad company. Sect. 17 of the same act declares that "nothing herein contained shall prevent counties and cities from taking and voting for subscriptions in the stock of said company, under the general laws of this State."

The general laws referred to include " An Act supplemental to an act entitled ' An Act to provide for a general system of railroad incorporations,' " which took effect Nov. 6, 1849. Laws of 1849, 2d Sess. p. 33.   That act authorizes every county to subscribe for stock in any railroad company, already or thereafter to be organized or incorporated, under any law of the State, to the extent of $100,000, and, for the payment of

the same, expressly empowers the judges of the County Court to borrow money, at a rate of interest not exceeding ten per cent per annum, and to pledge the faith of the county for the annual payment of the interest and the ultimate redemption of the principal, or, if they shall deem it most advisable, they are authorized to pay for such subscription in bonds of the county, bearing interest not exceeding the rate aforesaid ; and the railroad company is also authorized, by a separate section of the act, to receive such bonds in payment of such subscriptions.

The contention now is on the part of the plaintiff in error, that the language quoted from the seventeenth section of the charter of the Kankakee and Illinois River Railroad Company is a reservation merely of the power given by the general laws of the State to counties to subscribe for stock; and as the power to issue bonds in payment therefor is a distinct power, it is not included in the reservation, and therefore ceased to exist on the passage of the act, so far as the present transaction is concerned.

But the obvious meaning of the clause relied on to accomplish that result is merely that the general laws of the State authorizing counties to subscribe for stock in that railroad company shall remain unaffected by the charter, which conferred similar power on townships, corporate towns, and cities on the line of the road, and not in any manner to limit the operation and application of those general laws upon the subject. The very purpose of the proviso seems to us to have been to exclude the very conclusion now sought to be drawn from it.

Indeed, if the argument be good for anything at all, it results that, under the operation of this reservation, the naked power to subscribe for stock remains in the counties, without any authority, and therefore without any obligation, to pay for it ; for if the power to issue bonds is taken away, so also is the power to pledge the faith of the county for the annual payment of the interest and the ultimate redemption of the principal, — a pledge which means, of course, that payment shall be made out of the revenues of the county derived from taxation.

As such a construction of law confesses its own absurdity, it is not necessary to make any formal refutation of it.

It is further contended on the part of the plaintiff in error,

that if, at the date of these bonds, Kankakee County had corporate power to execute and issue them, it could only be done by the county court according to the terms of the statute conferring that power. Such, in fact, is the language of the general law of 1849, from which the power is derived.

But the county of Kankakee, it is admitted, was organized under the act of April 1, 1851, to provide for township organization. Laws of 1851, p. 35. Under that mode of organization the corporate powers of counties, otherwise exercised by the judges of the county court, are devolved upon a board of supervisors, such as, in the present instance, executed and issued the bonds in question. Art. 15, sect. 4, of that act declares that "the powers of a county as a body-politic can only be exercised by the board of supervisors thereof, or in pursuance of a resolution by them adopted." And art. 16, sect. 4, provides that "the board of supervisors of each county in this State shall have power, at their annual meetings, or at any other meeting, . . . to perform all other duties, not inconsistent with this act, which may be required of or enjoined on them by any law of this State to the county courts."

In *Green* v. *Wardwell*, 17 Ill. 278, it was said that the board of supervisors were the legal successors to the county commissioners court, as had been previously decided in *The People* v. *Thurber*, 13 Ill. 554. In *Prettyman* v. *Supervisors of Tazewell County*, 19 Ill. 406, the very point here raised was decided, and it was held that under the act of 1851 it was the duty of the board of supervisors to act instead of the county court in calling an election to vote on the question, in making the subscription for the stock, and in issuing county bonds in payment therefor. The act of April 1, 1861, " to reduce the act to provide for township organization and the several acts amendatory thereof into one act and to amend the same " (Session Laws of Illinois, 1861, pp. 216–237), removes all doubt on the subject. It confers (art. 14, sect. 6, 8th clause) upon the board of supervisors authority "to perform all other duties, not inconsistent with this act, which may be required of or enjoined on them by any law of this State, *or which are enjoined upon county courts, when holding terms for the transaction of county business in those counties not adopting township organization.*" This act was in

force when the bonds sued upon in this case were issued, and they are governed by it. The case of *Gaddis* v. *Richland County*, 92 Ill. 119, relied upon by counsel for plaintiff in error on this point, is not inconsistent with this result in the present case, because that decision is based on the words of the charter of the railroad company conferring the authority to subscribe to its capital stock, which, in the opinion of the court, expressly limited the exercise of the power to the county court. The same comment may be made upon the case of *Supervisors of Schuyler County* v. *People, ex rel. Rock Island & Alton Railroad Co.*, 25 Ill. 181.

We find no error in the record, and the judgment of the Circuit Court is accordingly

*Affirmed.*