# City of Mt. Carmel v. Maria L. Shaw and James I. Shaw.

1. CITIES AND VILLAGES—"*Woodman Spare That Tree.*"—A city has no plenary power to cut down shade trees and remove them simply because they are in the street. Shade trees standing just within the curbing of a sidewalk in a street do not constitute a nuisance and the city may be enjoined from destroying them.

2. TREES—*Policy of the State to Protect.*—The State has adopted a policy encouraging the growth of trees and discouraging their wanton destruction. The taste and comfort of the people deman t that this policy should be enforced.

3. TREES—*Power of Public Officers.*—The determination of the public officers that trees in a street be destroyed is not so far a judicial act as not to be subject to review by the court. Such officers are not supreme but must act in the interests of the public and in accordance with the spirit of the laws of the State.

4. TREES—*Right to Stand by Prescription.*—The fact that trees have been permitted to stand for more than twenty years raises the presumption that they were planted under lawful authority.

5. SHADE TREES—*City May Remove, When.*—When a shade tree in the business part of a city becomes an obstruction to travel or business, it may be removed by the municipal authorities as the public interests require.

6. MUNICIPAL CORPORATIONS—*Extent of Corporate Powers.*—Municipal corporations only have such powers as are conferred upon them expressly or by necessary implication.

7. MUNICIPAL CORPORATIONS—*Mode of Expressing Powers Not Prescribed.*—If the mode of exercise of the power conferred upon a city or village is prescribed that mode must be followed.

8. MUNICIPAL CORPORATIONS—*Mode of Exercising Powers Not Prescribed.*—Where the mode of the exercise of the power is not prescribed by the charter, but is left discretionary with the corporate officials, the mode determined upon, if unreasonable or oppressive, will be held invalid.

9. CITIES AND VILLAGES—*Donating Streets, etc.—Ultra Vires.*—An ordinance donating and vacating "a strip two feet wide next to the property lands, lot or lots abutting on a street," is an exercise of power by the city not authorized, and therefore void.

10. CITIES AND VILLAGES—*Power to Vacate Streets.*—Whether a city is invested with the fee in the streets or an easement, a trust is imposed for the use of the public. The power to vacate does not include the power to vacate only a portion, but all of the street, when it is determined that the street, as such, is no longer required for public use.

11. ORDINANCES—*Part Valid and Part Invalid.*—One section of an ordinance may be valid and another section invalid. An ordinance

going beyond the power of the corporation may be held valid so far as the power lawfully extends and *ultra vires* as to the residue.

**Memorandum.**—Bill for injunction. Appeal from the Circuit Court of Wabash County; the Hon. SILAS Z. LANDES, Judge, presiding. Heard in this court at the February term, 1893, and affirmed. Opinion filed March 23, 1894.

The statement of facts is contained in the opinion of the court.

APPELLANT'S BRIEF, M. F. HOSKINSON, ATTORNEY.

The defendant has, under our statute, full control of the streets of the city, and has the right in its discretion to make sidewalks in any way and manner and at such location as it deems best, and courts will not inquire as to whether the location of an improvement being made by the city in good faith is the best or not. Roberts v. City of Chicago, 26 Ill. 249.

A city incorporated under the general law has a large discretion as to opening, grading and repairing of streets and sidewalks in respect to the time, manner and cost of the same, in the exercise of which it will not be controlled by the courts, unless there is great abuse operating upon individuals. Brush v. City of Carbondale, 78 Ill. 74.

The bill alleges that the trees are in front of the lot. Then the city has sole control over the trees, and the complainants have no right in the trees or to them only in common with other citizens, but no title or authority over them as against the public. Baker v. The Town of Normal, 81 Ill. 108.

A city is not liable for errors of judgment in making its streets and sidewalks fit for public use, or made liable for the inconvenience and expense of adjusting adjacent property to the grade of the street as changed. Shawneetown v. Mason, 82 Ill. 337; Village of Hyde Park v. Dunham, 85 Ill. 569.

APPELLEES' BRIEF, MUNDY & ORGAN, ATTORNEYS.

In this case the title to the streets is in the property owners, the plat of the city having been acknowledged by attor-

ney in fact. Thomsen v. McCormick, 136 Ill. 135; Earll v. City of Chicago, 136 Ill. 277.

Therefore the power of the city is limited.

Individuals may invoke a court of equity in cases of this sort. C. & V. R. R. Co. v. The People, 92 Ill. 170; The People ex rel. Farrington v. Whitcomb, 55 Ill. 172.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

The appellees were the owners and in possession of lot 329, situated on the north side of Sixth street, in the city of Mt. Carmel, Illinois, near the center in width of which is located their large dwelling house, in which they have resided for about thirty years. On each side of the front of their house, in the street, are two large maple trees, about forty feet in height and two in diameter, with ample branches, which afford very desirable shade to the house and lot in summer, protection against dust and shelter against storms. They were planted about the year 1857, and the nearest is situated six feet from the south line of appellee's lot on north line of Sixth street, as the city was originally platted, as shown by an amended plat of date October 15, 1822, signed by the attorney in fact of the proprietors, which, as conceded by counsel, makes the dedication at common law. The sidewalks heretofore constructed were always placed between said lot and trees, to which no one made objection, as the trees supplied a pleasant shade for pedestrians, under which, in the heat of summer, they often paused to cool and refresh themselves.

In July, 1891, the city council passed "an ordinance in relation to lawns and sidewalks, and narrowing or cutting down the width of streets, and donating certain portions of ground to the property holders."

By Sec. 4, it was provided "that a strip two feet wide next to the property, lands, lot or lots, abutting on said streets shall be, and is hereby vacated, donated and given to and shall be a part of said lands, lot or lots."

Sec. 5. "That six feet * * * next to the property, lands, lot or lots, on both sides of said streets, shall be set

apart upon which to build sidewalks." It recognized the streets as being ninety-nine feet in width.

The ordinance further provided for a survey to be made in accordance with its provisions, which was done, and a plat made which was approved by the council. The surveyor testified: " I stuck stakes along Sixth street inside the line next the street for the proposed side walk. I placed the stakes eight feet from where I found the original line on Sixth street. I intended to leave two feet north of the six-foot sidewalk. If built that way, it would be vacating two feet between the line of the fence and the sidewalk.

On July 25, 1892, the city council passed an ordinance requiring that the owners of lots should construct a brick sidewalk six feet in width, on the north side of Sixth street, and thereby relieve their property from special taxation. " Said sidewalk shall be made and constructed along the *outside line of said* street and *adjoining the property, lands, lot or lots, abutting on said street.*" There is no other direction in the ordinance as to the location of the sidewalk.

The city, in constructing the sidewalk under said ordinance, recognized the outside line of Sixth street as the one established by the surveyor, under the ordinance passed in July, 1891, whereby two feet off each side of the street was donated to the adjoining lot owners, thereby extending it into the street, so as to include the larger part of the body of said trees, which the city officials proposed to cut down as being in the way of said improvement. Thereupon the appellees filed their bill in chancery, alleging the facts substantially as above set forth, except there was no specific reference to the ordinances; averring there was no public or other necessity for the destruction of the valuable shade trees; that there was sufficient room between appellee's south line, or north line of the ninety-nine foot street, and the trees, to build said walk without damage to said trees; that to destroy them would result in irreparable damages to the owners of the lots, as well as injury to the public, and prayed for and obtained a writ of injunction.

The answer admits the substantial facts set up in the bill but denies the conclusions reached, that there was no neces-

sity for destroying the trees, or that such destruction would occasion irreparable damages; avers the passage of the ordinance of 1892, and that the outside line of said walk would bring from one-half two two-thirds of the diameter of said trees within it and hence the necessity for their removal, which it is affirmed the city has a right, in its discretion, to do. Issue was joined, and hearing had, upon which a decree was entered in favor of appellees, by which it was ordered and adjudged by the court "that the defendant, the City of Mt. Carmel, Illinois, be forever and perpetually restrained from cutting, digging away or from destroying or interfering with said shade trees  *  *  *  excepting within six feet of the true south line of said lot 329," whereupon the city took this appeal and asks a reversal on the broad ground that as the trees are in the street it has the plenary power to cut them down and remove them in its discretion, the exercise of which discretion, in the absence of bad faith, is not subject to review by the courts.

Three questions may be said to arise in regard to the exercise of power by such a corporation as appellant. 1. Is such exercise of power impliedly or expressly authorized by a grant? 2. Is it in pursuance of or in accordance with the method prescribed? 3. Is the mode of exercise reasonable where there are no limitations?

The courts have the right to make these inquiries and it is their duty to apply these tests as occasion demands; for such corporations only have such powers as are conferred expressly or by necessary implication. Petersburg v. Maffin, 14 Ill. 193; Low v. People, 87 Ill. 385. And their acts beyond such powers are void. Agnew v. Brall, 124 Ill. 312.

If the mode of exercise of the power is prescribed, that mode must be followed. Gaddis v. Richland County, 92 Ill. 119.

Where the mode of exercise of the power is not prescribed by the charter but is left discretionary with the corporate officials, the mode determined upon, if unreasonable or oppressive, will be held invalid. Brush v. City of Carbondale, 78 Ill. 74; Lakeview v. Tate, 130 Ill. 247.

Applying these tests to the acts of appellant, the law determines that Sec. 4 of the ordinance of July, 1891, donating and vacating "a strip two feet wide next to the property, lands, lot or lots, abutting on said street" —Sixth street— was an exercise of power by the city not authorized, and therefore void. Whether the city was invested with the fee in the streets or an easement, a trust was imposed for the use of the public. The power to vacate does not include the power to vacate only a portion but all of the street, when it is determined that the street as such is no longer required for such use. Smith v. McDowell, No. 2, Vol. 35 N. E. Rep. p. 141.

With Sec. 4 of said ordinance eliminated, Sec. 2, which is a valid provision, requires that six feet next to the lots on Sixth street shall be set apart upon which to build sidewalks. This section may stand, though the other section is invalid.

An ordinance going beyond the power of the corporation may be held valid so far as the power extends, and *ultra vires* as to the residue. Kittering v. Jacksonville, 50 Ill. 39; Harbaugh v. Monmouth, 74 Ill. 367; Poyer v. Village of Des Plaines, 123 Ill. 111; Wilbur v. City of Springfield, Ibid. 395.

Therefore, under the provisions of said ordinance of 1891, the city was required to utilize the six feet next to appellees' lot for the location of the sidewalk.

The ordinance of 1892, under which the sidewalk in question was required to be constructed by appellees, also provided that "said sidewalk shall be made along the outside line of said street and adjoining the lots abutting on said street." Clearly, then, the city, in attempting to locate said sidewalk two feet from the outside line of said street, was violating the valid part of its own law. It is clearly proven that the sidewalk can be constructed between such outside line and said trees, in which case to destroy trees of such age, dimensions, beauty and utility as these are shown to be, would be intolerably wanton and oppressive. The planting and cultivation of trees are encouraged by the State

and Nation. City and village authorities are expressly empowered to plant trees upon the streets. Art. 5, Sec. 1, Cl. 8 of Chap. 24, p. 463, Starr & C. Township authorities are authorized to offer premiums and to take such action as shall induce the planting and cultivation of trees along highways in such towns, and to protect and preserve trees standing along or on highways. Art. 4, Sec. 1, Cl. 6, Chap. 139, Starr & C., p. 2412. By the act of 1887, Vol. 3, Starr & C., p. 56, it is made the duty of the governor of the State " annually in the spring, to designate by official proclamation, a day to be designated as ' Arbor Day,' to be observed throughout the State as a day for planting trees, shrubs and vines about the homes and along the highways and about public grounds within the State, thus contributing to the wealth, comforts and attractions of our State." These laws represent the deep sentiment and spirit of the people and declare a fixed public policy, which public officials must recognize and observe.

Trees are especially adapted to beautify and adorn the streets of the residence portion of a city, and very materially contribute to the enhancement of the value of such property, as well as to the health, comfort, pleasure and good taste of the inhabitants. To wantonly destroy a noble tree, especially if planted by the hand of man for a useful purpose, which for long years it has served, shocks a tender sentiment in our natures, well represented and expressed in that familiar song of " Woodman, Spare That Tree."

The fee in the street adjacent to lot 329 is in the appellees, as is conceded by counsel. Whether it is or not, the appellees have an interest in the preservation of these trees, as the owners of property and as residents of the city. Shade trees standing just within the curbing of a sidewalk in a street do not constitute a nuisance, and the city may be enjoined from destroying them. Bills v. Belknap, 36 Iowa, 583; Patterson v. Vail, 43 Iowa, 142. In the Bills case it is said by Chief Justice Beck, " The State has adopted a policy encouraging the growth of trees and discouraging their wanton destruction. The tastes and comfort of the people

436     APPELLATE COURTS OF ILLINOIS.

VOL. 52.]     City of East St. Louis v. Ill. & St. L. Bridge Co.

demand that this policy should be enforced, and we confess that we have no sympathy with that spirit of vandalism which would unnecessarily remove the ornaments of the country, whether they were erected by the hand of industry or are the bounteous production of nature." He further declares that the determination of the public officers that the trees should be destroyed is not so far judicial that it is not subject to review by the courts. That such officers are not supreme, but must act in the interest of the public and in accordance with the spirit of the laws of the State.

There is no proof in this case that the trees in controversy were planted by authority, but as is said in the case of Bliss v. Ball, 99 Mass. 597, the fact that they have been permitted to stand for more than twenty years, raises the presumption that they were planted under lawful authority.

While the decree of the court enjoining the city from destroying the trees will be affirmed, it will have to be modified. The injunction is perpetual. Conditions may so change, that in time public interest may require that the sidewalk should be much wider than six feet; should this property by the growth of the city become a business part, then a sidewalk might be required of twelve feet in width. In such case the trees would be an obstruction to travel, and the city would have a right to remove them when they became so. This time may never come; yet we are not disposed to interfere with the lawful exercise of power on the part of the city, should the occasion ever arrive. The decree will therefore be modified so that the injunction shall remain in force so long as there is no public necessity for a sidewalk along lot 329, in excess of the width of six feet. With this modification the decree will be affirmed.