407 Ill. 436 (1950)
95 N.E.2d 611
MINNIE NATT et al., Appellants,
v.
THE SUBURBAN COOK COUNTY TUBERCULOSIS SANITARIUM DISTRICT et al., Appellees.
No. 31743.
Supreme Court of Illinois.
Opinion filed November 27, 1950.
*437 *438 DAVID LARSON, of Chicago, for appellants.
EDWIN B. BERNDTSON, and SCHULTZ, KRINSLEY, VOORHEIS & HEDBERG, both of Chicago, (VICTOR HEDBERG, and ROBERT B. MOORE, of counsel,) for appellees.
Decree affirmed.
Mr. JUSTICE WILSON delivered the opinion of the court:
The plaintiffs, Minnie Natt, Carl F. Natt, and Ann Plattner, qualified taxpayers, on behalf of themselves and all other taxpayers similarly situated, filed a complaint in the circuit court of Cook County against the defendants, the Suburban Cook County Tuberculosis Sanitarium District, hereafter referred to as the District, and its four officers and directors. On September 30, 1948, the District passed an ordinance authorizing the issuance of bonds in the amount of $6,000,000 to pay the cost of constructing and equipping three hospitals for the care and treatment of persons afflicted with tuberculosis. The ordinance provided for submitting to the electorate of the District on November 2, 1948, at a special election to be held at the same time and at the same place where the general election was to be held, the proposition of issuing the bonds. The result of the canvass of the votes was that 222,973 votes were cast for, and 122,136 against, the issuance of the bonds. By their complaint, plaintiffs sought to restrain (1) the issuance and sale of the bonds and (2) the levy or attempted levy of taxes to pay principal and interest on *439 the bonds. Defendants answered, the cause was heard on the pleadings, and a decree entered finding the issues for defendants and dismissing plaintiffs' complaint for the want of equity. Plaintiffs appeal.
The District was organized in 1947 under "An Act to provide for the creation and management of tuberculosis sanitarium districts," hereafter referred to as the Sanitarium Districts Act, which has been in force since July 1, 1937. (Ill. Rev. Stat. 1949, chap. 23, pars. 177a to 177n, inclusive.) The District comprises all the territory in Cook County lying outside Chicago. An action to enjoin the extension and collection of taxes produced by the tax levy ordinance of the District for the fiscal year beginning July 1, 1948, upon the grounds that the ordinance was not adopted within the time prescribed by law and that the Sanitarium Districts Act was unconstitutional resulted in a decree dismissing the complaint for the want of equity. On September 22, 1949, we affirmed the decree and sustained the constitutional validity of the challenged statute. (Kloss v. Suburban Cook County Tuberculosis Sanitarium Dist. 404 Ill. 87.) Thereafter, on October 26, 1949, the superior court of Cook County, in a quo warranto proceeding instituted by the State's Attorney of Cook County, assailing the legal existence of the District, found the statute constitutional in its entirety and that the District had been lawfully organized thereunder. This present action was instituted on March 2, 1950.
Plaintiffs make numerous contentions. Of these, the first is that the special election of November 2, 1948, was void for the reason that section 14 of the Sanitarium Districts Act under which the election was called and held is, in turn, invalid because it fails to prescribe the method and procedure for holding and conducting an election called thereunder, and that, in consequence, the attempts of the District to hold the election were without warrant or authority of law and of no force or effect. In the alternative, *440 plaintiffs contend that the election was void because of defendants' failure to comply with the Election Code in the seven respects enumerated in their complaint. Defendants maintain, on the other hand, that section 14 is complete and valid; that the Election Code governs the method and procedure for holding and conducting an election under section 14, and that they have complied fully with its provisions. The decisive issue thus made by the pleadings and argued upon this appeal is whether the Election Code applies to a special election under section 14 of the Sanitarium Districts Act.
To the extent relevant, section 14 of the Sanitarium Districts Act, (Ill. Rev. Stat. 1949, chap. 23, par. 177n,) declares, "No such district shall incur indebtedness for any purpose other than the acquisition of land unless the proposition to issue bonds or otherwise incur such indebtedness shall have been first submitted to the legal voters of such district at a general election or at any special election called for such purpose and shall have been approved by a majority of those voting upon the proposition."
The gist of plaintiffs' contention is that, although section 14 authorizes an election on a bond issue proposition, it fails to prescribe any method or procedure for holding and conducting the election; that, in particular, section 14 makes no provision for giving notice of the election; that nothing is said as to where the election shall be held and conducted and who shall serve as judges and clerks of election; that no attempt is made to provide a form of ballot or to prescribe the manner in which the returns of the election shall be made and canvassed, and that section 14 affords no means of determining these matters. Upon the basis of these assertions, plaintiffs invoke the familiar rule that a statute which is so vague, indefinite and uncertain that courts are unable, by accepted rules of construction, to determine, with any degree of reasonable certainty what the legislature intended, will be declared inoperative *441 and void. (Triner Corp. v. McNeil, 363 Ill. 559; Mayhew v. Nelson, 346 Ill. 381.) Statutes vulnerable to the objection stated have been declared unconstitutional as denying due process. (Parks v. Libby-Owens-Ford Glass Co. 360 Ill. 130; People ex rel. Travis, v. Rogier, 326 Ill. 310.) The omission, however, to specify every detail, step by step and action by action, does not render a law vague, indefinite or uncertain from a constitutional standpoint. People ex rel. Christensen v. Board of Education, 393 Ill. 345.
Section 14 commands that a proposition to issue bonds of a sanitarium district organized under the statute for purposes other than the acquisition of land be submitted to the legal voters of the District at a general election or at any special election called for such purpose. When the Sanitarium District Act was passed, among the statutes then in force dealing with elections were the General Election Law of 1872, the City Election Law of 1885, and the Ballot Act of 1891. These statutes were of general application and prescribed the method and procedure for holding general and special elections. Other statutes, among them the School Act, the Drainage Act, and the Forest Preserve Act, provided for calling and holding special elections on public questions. Some of these statutes prescribed the exact manner of holding elections. Others, including the Forest Preserve Act, did not contain specific provisions governing the conduct of elections called thereunder. In 1943, "An Act concerning elections," (Ill. Rev. Stat. 1949, chap. 46, pars. 1-1 to 30-3, inclusive,) commonly called the Election Code, became effective. This act, the general law for the conduct of elections in Illinois, is a codification and continuation of all existing general laws relating to elections.
Recourse to the Election Code discloses that it applies to any special, general or primary election, including a special election on a bond-issue proposition under section 14 of the Sanitarium Districts Act. As of November 2, 1948, *442 the day the special election in question was held, section 3 of article I of the Election Code (Ill. Rev. Stat. 1949, chap. 46, par. 1-3,) provided, in part: "1. `Election' includes the submission of all questions of public policy, propositions, and all measures submitted to popular vote, and includes primary elections when so indicated by the context. * * * 3. `Special election' means an election, either general or municipal, not regularly recurring at fixed intervals, irrespective of whether it is held at the same time and place and by the same election officers as a regular election. * * * 5. `Municipal election' means an election or primary, either regular or special, in cities, villages, incorporated towns, townships, park districts, school townships and school districts, sanitary districts, and in all other political and governmental subdivisions whose territorial limits are less than a county, irrespective of whether such election is held at the same time and place and by the same election officers as a general election; and `municipality' means any such political or governmental subdivision. 6. `Political or governmental subdivision' means any municipality and any other area less than a county in which elections are or may be held."
Article II provides for the establishment of election precincts and the places for holding elections, and all general and special elections must be held at the places designated. In the territory of counties beyond the jurisdiction of boards of election commissioners, the county board is named the authority to establish precincts and polling places. Where municipalities are operating under article 6 of the Code and are subject to the jurisdiction of a board of election commissioners, the board is designated as the authority to fix precincts and the places of election.
Section 1 of article 12 provides for publication of notice of the election by the county clerk at least thirty days previous to any general election, and at least twenty days prior to any special election. Section 3 of article 12 *443 provides that, in any city, village or incorporated town operating under article 6, the board of election commissioners shall give timely notice through the press of the time and place of election in each precinct of the municipality. Article 13 provides for the appointment of judges and clerks of election in the territory of counties outside the jurisdiction of boards of election commissioners. Article 14 provides for such appointments in municipalities under the jurisdiction of boards of election commissioners. Article 16 deals with the printing and delivery of ballots and their form and content. Section 7 of article 16 declares, in part, "Whenever a public measure is submitted to be voted upon by the people within any district or political subdivision less than the State the substance of such public measure shall be clearly indicated on a separate ballot." A form of ballot is set forth, followed by provisions describing how the elector shall designate his vote thereon. Manifestly, voting upon a bond issue proposition under section 14 of the Sanitarium Districts Act is voting upon a "public measure," within the contemplation of section 7 of article 16.
Articles 17 and 18 cover the conduct of elections and making returns. These sections refer repeatedly to "special elections" and to "elections at which propositions are submitted to a popular vote." In short, there is no attempt to limit the scope of their application to general elections. Article 22, dealing with the matter of canvassing votes, makes provision for a county canvassing board to enter on a separate sheet, "votes for county officers and for propositions submitted to the electors of the county only." Section 8 provides for a canvassing board in municipalities operating under article 6 and specifies that "all votes for any proposition, which may be submitted to a vote of the people," shall be entered on one sheet and "all votes against any proposition, submitted to a vote of the people, on another other sheet." It is clear that article 22 applies to the canvassing *444 of the returns of a referendum held under section 14 of the Sanitarium Districts Act. Indeed, the conclusion is inescapable that the legislative intent reflected in the Sanitarium Districts Act and the Election Code was to incorporate relevant provisions of the Election Code for holding and conducting elections into section 14 of the Sanitarium Districts Act.
Statutory provisions similar to section 14 of the Sanitarium Districts Act fortify our conclusion. Section 13 of the Forest Preserve Act (Ill. Rev. Stat. 1949, chap. 57 1/2, par. 14,) provides, so far as pertinent, "No district shall incur indebtedness for any purpose other than the acquisition of land unless the proposition to issue bonds or otherwise incur indebtedness shall have been first submitted to the legal voters of the district at a general election or at any special election called for such purpose and shall have been approved by a majority of those voting upon the proposition." It will be observed that the quoted language is identical with that employed by the General Assembly in section 14 of the Sanitarium District Act. The Forest Preserve Act has been in effect since 1913 and the Forest Preserve District of Cook County, among other forest preserve districts, has been organized thereunder. Its constitutionality has been sustained. (Perkins v. Board of County Com'rs, 271 Ill. 449.) In the case cited, this court specifically held that the terms of the Forest Preserve Act were not so indefinite or incapable of execution as to render it invalid. People ex rel. Carr v. Chicago Heights Terminal Transfer Railway Co. 319 Ill. 389, construed section 13 of the Forest Preserve Act, but its constitutional validity was not assailed in the case cited or in any other case.
In People ex rel. Lauth v. Wilmington Coal Co. 402 Ill. 161, the validity of a special election held in the territory of High School District No. 204 was presented for decision. The contention was made that the election was *445 illegal because the reverse side of the ballots used at the election allegedly did not bear the facsimile signature of the public officer causing the ballots to be printed, as required by section 3 of article 16 of the Election Code. The special election was held pursuant to the authority granted by section 3.1 of article 17 of the School Code. (Ill. Rev. Stat. 1949, chap. 122, par. 17-3.1.) Article 17 does not, however, establish the form of ballot to be used in elections on the proposition of increasing school taxes nor does it refer to any other statute for the purpose of determining the form of such ballot. We pointed out that where the School Code, or any other statute, establishing special or local elections, provides the particular form of ballot to be used, article 16 of the Election Code has no application but, that, on the other hand, in the absence of a prescribed form of ballot for a special election, article 16 of the Election Code is applicable.
This principle, namely, that the Election Code governs special elections called under statutes not prescribing the manner for holding and conducting the elections has been applied in other cases. In People ex rel. Seegren v. Sackett, 351 Ill. 363, a special election was held in a portion of Cook County to determine whether a park district, to be known as the Northeast Park District of Evanston, should be organized. An election was called and held under the Park District Act of 1895. In a quo warranto action attacking the legal existence of the district, the contention was advanced that votes cast by absentee voters should have been rejected because the Park District Act made no provision for the use of the Absentee Electors Law. Rejecting this contention, the court observed: "The wording of the Absentee Electors law clearly reflects a legislative intent for it to apply to any special, general or primary election. * * * The act was made to apply to `district' elections. * * * An election held for the purpose of organizing and electing commissioners of a park district *446 under the Park District act of 1895 is a district election, to which the provisions of the Absentee Electors law clearly apply."
In People ex rel. Roche v. Cairo and Thebes Railroad Co. 319 Ill. 118, the county board of Alexander County levied taxes for road bonds, pursuant to the authority of a special election on the proposition of issuing county bonds for the purpose of constructing roads and levying an addition tax for the payment of principal and interest of the bonds. The question was presented as to whether the election resulting in an affirmative vote on the proposition complied with section 8 of article IX of our constitution which ordains: "County authorities shall never assess taxes, the aggregate of which shall exceed seventy-five cents per $100 valuation, * * * unless authorized by vote of the people of the county." Since there was no statute providing the manner of calling and conducting an election for the purpose of raising the constitutional limitation of seventy-five cents, an election called under the quoted provision of the constitution, it was decided, must be called and conducted in harmony with laws providing for the calling and conducting of elections on similar propositions,  in short, the general election laws of the State. Gaddis v. Richland County, 92 Ill. 119, and Williams v. People ex rel. Wilson, 132 Ill. 574, are to the same effect.
There is nothing singular in the requirement of section 14 of the Sanitarium Districts Act that bond issue propositions obtain approval of the voters without prescribing the precise method for conducting a special election. Illustrative are section 17-1 of the Revised Cities and Villages Act relating to general municipal bond issues (Ill. Rev. Stat. 1949, chap. 24, par. 17-1,); section 4 of the act of 1907 relating to the issuance of the bonds of a municipality for the purpose of acquiring and constructing bridges, (Ill. Rev. Stat. 1949, chap. 121, par. 197,) and sections 16 and 16 1/2 of the Sanitary District Act of 1907 (Ill. Rev. *447 Stat. 1949, chap. 42, pars. 262, 262 1/2,) authorizing the issuance of bonds by certain sanitary districts.
The clear-cut rule deducible from the decisions of this court and from the statutory provisions to which reference has been made is that, where a statute provides for a special election but makes no provision for the method of calling and conducting it, the general law for the conduct of elections controls. We are of the opinion that all the provisions of the Election Code relevant to the conduct of special elections are incorporated as an integral part of section 14 of the Sanitarium Districts Act. Since the Election Code prescribes in detail the rules necessary for the conduct of a special election, it follows that section 14 is complete and not subject to the objection that its provisions are so vague, indefinite and uncertain as to offend constitutional guaranties. This being so, the Sanitarium Districts Act afforded ample authority for calling and holding the special election on November 2, 1948.
Plaintiffs alternative contentions require consideration. Of these, the first is that the District did not comply with section 1 of article 12 of the Election Code (Ill. Rev. Stat. 1949, chap. 46, par. 12-1,) which provides, in part: "At least 30 days previous to any general election, and at least 20 days previous to any special election, except in cases otherwise provided for, the county clerk shall publish, * * * a notice of such election in two or more newspapers printed and published in the county, city, village, incorporated town or town, as the case may be." Plaintiffs assert that notice of the special election of November 2, 1948, given by the District, was published in only one newspaper, namely, the Chicago Daily News. At the time the special election was called, there was nothing in the Election Code requiring the District to give any notice of the special election of November 2, 1948. The notices of the election which the Election Code required were given by the county clerk of Cook County and the board of election *448 commissioners of the city of Chicago. Section 1 of article 12 invoked by plaintiffs imposes the duty upon the county clerk of Cook County of publishing the election notice in the territory of the District under his jurisdiction and does not purport to impose this duty on the district itself. (Gaddis v. Richland County, 92 Ill. 119.) Section 3 of article 12 imposes upon the board of election commissioners of the city of Chicago the duty of giving timely notice of the time and place of the election in the remaining territory of the District under its jurisdiction. It affirmatively appears that notices of the election were published by the county clerk in the Chicago Daily News and the Southtown Economist more than twenty days before the election pursuant to section 1 of article 12. In addition, a notice of the election was published by the board of election commissioners of the city of Chicago in the Chicago Herald-American, as required by section 3 of article 12. Publication of these notices satisfied the requirements of the Election Code with respect to giving legal notice of the election.
In Bilek v. City of Chicago, 396 Ill. 445, cited by plaintiffs, the election notice prescribed by section 1 of article 12 of the Election Code was not published within the time fixed by the statute and, accordingly, the notice was held insufficient. Here, the prescribed notices were published within the time prescribed.
Plaintiffs next contend that the ordinance of the District calling a special election and the notice of the election published by the District did not specify that, in the territory of the District outside the jurisdiction of the board of election commissioners of the city of Chicago, the election was to be held at the polling places established in such territory by the county board of Cook County. Section 1 of the ordinance calling the special election provided that the election should be held at the same time and places where the general election was to be held on November 2, *449 1948. Section 2 provided that, in the territory beyond the jurisdiction of the board of election commissioners of the city of Chicago, the polling places for the special election should be those selected by the county clerk for the general election to be held the same day. The notice of the special election published by the District contained a like statement. Prior to the adoption of the ordinance on September 30, 1948, it appears that the polling places for the general election to be held in the territory of the District outside the jurisdiction of the city election commissioners had been established by the county board, pursuant to section 2 of article 11 of the Election Code. The county clerk, likewise, had published notices of the general election, setting forth the exact locations of the officially established polling places. The polling places designated by the county clerk were those previously established by the county board for the general election and were the polling places referred to in sections 1 and 2 of the ordinance passed by the District and in the notices of the special election published by the District. The provisions of the ordinance disclose that the voting on the bond issue proposition would take place at the same polling places as the voting in the general election on the same day. This procedure was in accord with section 14 of the Sanitarium Districts Act authorizing bond issue propositions to be submitted at a "general election." Since the polling places for the general election had been designated, it was unnecessary that the ordinance of the District submitting the bond issue proposition to a referendum should re-name them. Central Illinois Public Service Co. v. City of Taylorville, 307 Ill. 311.
Plaintiffs insist that the ordinance of the District calling the election failed to specify that, in the territory of the District outside the jurisdiction of the board of election commissioners of the city of Chicago, the judges and clerks of the election were to be those selected by the county board. Section 2 of article 13 of the Election Code provides that *450 the county board of each county shall select the judges and clerks of election for all elections in areas under its jurisdiction. Before the ordinance was adopted, the county board had appointed the judges and clerks of election for the general election to be held on November 2, 1948, in the territory of the District under the jurisdiction of the county clerk. Their appointment was confirmed by an order entered by the county court. The county clerk notified the judges and clerks of election of their appointment and a commission, bearing the seal of the county court, was issued to each of them. Section 6 of article 13 of the Election Code provides, "The judges and clerks so appointed shall be and continue judges and clerks of all general and special elections held within their respective precincts or districts, until other judges and clerks shall be appointed in like manner." Section 14 of the Sanitarium Districts Act, as recounted, authorizes submission of a bond issue proposition at a general election. The judges and clerks of the general election having been legally selected, it was unnecessary that the ordinance submitting the proposition to a vote of the people should re-name them. Central Illinois Public Service Co. v. City of Taylorville, 307 Ill. 311.
Plaintiffs make the further contention that the special election was void for the reason the District did not prepare and supply the ballots used in the election but, instead, caused the ballots to be prepared and supplied by the county clerk of Cook County and the board of election commissioners of the city of Chicago. Plaintiffs make no claim that the ballots were not in the exact form prescribed by statute, their point being that they were not prepared and supplied by the proper public officer, namely, the secretary of the board of directors of the District. Section 14 of the Sanitarium Districts Act provides that a bond issue proposition may be submitted at a general election but does not prescribe a form of ballot to be used in submitting the proposition, nor does it declare who shall have charge of *451 the printing of the ballots. Under such circumstances, the provisions of article 16 of the Election Code applied to the special election of November 2, 1948. (People ex rel. Lauth v. Wilmington Coal Co. 402 Ill. 161.) Section 7 of article 16 of the Election Code makes provision for voting on a public measure on a separate ballot, contains a form of ballot and provisions as to how the elector shall designate his vote thereon, and states further, "All provisions of this Act relating to ballots shall apply to such separate ballot." Sections 5 and 5.01 of article 16 imposed upon the county clerk and the board of election commissioners of the city of Chicago the duty of preparing and supplying the bond issue ballots in this case. (People v. Sackett, 351 Ill. 363.) This duty they performed.
Plaintiffs next contend that the ballots used in the election did not contain the facsimile signature of the secretary of the board of directors of the District, as required by section 3 of article 16 of the Election Code which provides that a facsimile of the signature of the clerk or other official who has caused the ballots to be printed shall appear on the back or outside of the ballot. No duty rested upon the secretary of the District to prepare and supply the ballots used at the special election. Instead, this duty devolved upon the county clerk of Cook County and the board of election commissioners of the city of Chicago. The ballots used at the election held in the cities of Chicago Heights, Berwyn, and Harvey, the town of Cicero, and the villages of Elmwood Park, Summit, Stickney, Morton Grove, Skokie and Lyons were prepared and supplied by the board of election commissioners of the city of Chicago. These ballots contained the facsimile signature of its chief clerk, the public officer who caused them to be printed. The ballots used at the special election held in the remaining portion of the District were prepared and supplied by the county clerk and contained his facsimile signature. The only facsimile signatures required to be printed upon the *452 ballots were those of the chief clerk of the city board of election commissioners and the county clerk. The record shows complete compliance with section 3 of article 16 in the respects assailed.
Plaintiffs contend, further, that the board of election commissioners of the city of Chicago had no jurisdiction under the Election Code, or any other statute, to hold and conduct the special election of November 2, 1948, in the municipalities last named. They have recourse to section 24 of article 17 of the Election Code which, they maintain, is applicable only to elections held in and for the municipalities described, and, in consequence, is inapplicable to an election for a tuberculosis sanitarium district. The jurisdiction of the city board is not confined to the territorial limits of the city of Chicago but extends beyond the city and includes those cities, towns and villages in Cook County which have adopted article 6 of the Election Code. Prior to the special election of November 2, 1948, the three cities, the one town, and the six villages named, all located in Cook County and within the territory of the District, had adopted by referendum article 6, thereby electing to come under the jurisdiction of the board of election commissioners of the city of Chicago. Article 6 gives the board exclusive jurisdiction over all elections held in the municipalities of the same county which have adopted the article, including an election on a proposition for the issuance of bonds under section 14 of the Sanitarium Districts Act. Section 11 of article 6 provides that, after its adoption, it "shall become operative and binding, and the law for all elections in such city, and for the electors thereof, and all courts and other persons shall take notice thereof." Section 26 of article 6 implements the quoted provision. As observed in People ex rel. Broomell v. Hoffman, 322 Ill. 174, "The City Election act [now a part of article 6 of the Election Code] is therefore, in a municipality which has adopted it, applicable *453 alike to all elections, whether held to choose public officers or to pass upon some measure or proposition submitted by proper authority. The legislative intent, manifested by the express provisions to which reference has been made, is that in such a municipality only a single agency for the conduct of elections shall exist."
The final contention of plaintiffs is that neither the city board of election commissioners nor the county clerk had jurisdiction under the Election Code, or any other statute, to canvass and determine the results of the election. The provisions of the Election Code giving the board of election commissioners of the city of Chicago jurisdiction to hold and conduct the special election of November 2, 1948, in the ten municipalities previously named also empowered it, together with the county judge and the corporation counsel of the city of Chicago, to canvass and determine the results of the election held in each of those municipalities. Section 8 of article 22 of the Election Code specifically so provides. The canvassing board made and declared the results of the election and certified them to the county clerk, conformably to the statute. In like manner, the county clerk, with the assistance of two justices of the peace, canvassed and determined the results of the election held in the territory of the District lying outside of the municipalities, in accordance with the provisions of section 1 of article 22. In short, the returns from the special election of November 2, 1948, were made and canvassed in conformity with the applicable statutory provisions.
The decree of the circuit court of Cook County is right, and it is affirmed.
Decree affirmed.