(No. 18759.—)

The George G. Renneker Company, Plaintiff in Error, vs. The South Park Commissioners, Defendant in Error.

*Opinion filed October 25, 1928—Rehearing denied Dec. 11, 1928.*

John F. Tyrrell, for plaintiff in error.

Elmer J. Schnackenberg, (William J. Corrigan, of counsel,) for defendant in error.

Mr. Justice Farmer delivered the opinion of the court:

The Appellate Court reversed a judgment of the circuit court of Cook county in the case of the George G. Renneker Company against the South Park Commissioners, and the record comes to this court upon the petition of the company for writ of *certiorari*.

The suit was an action of assumpsit brought by plaintiff in error against the South Park Commissioners, the board of election commissioners and the city of Chicago. The declaration contained a special count and the common counts. The special count alleged the South Park Commissioners is a municipal corporation empowered by law to maintain, improve and develop parks and boulevards in the original South town of the city of Chicago; that the election commissioners are charged by law with the conduct, management and operation of elections in the city of Chicago, Chicago Heights, town of Cicero and village of Summit, and that the city of Chicago is a municipal corporation organized and existing under the laws of the State of Illinois. The declaration alleges the South Park Commissioners passed a resolution on October 11, 1924, which is set out *in hæc verba,* providing for the submission to the voters at the general election to be held November 4, 1924, of the proposition of issuing $3,000,000 bonds of the South Park Commissioners, which resolution the South Park Commissioners directed to be filed with the election commissioners of the city of Chicago as authority for the election commissioners to provide ballots for the election and the holding thereof as required by law. The special count alleged the election commissioners advertised for bids for ballots and specimen ballots for the bond issue proposition in each of the 867 precincts of the South Park district; that the total number of ballots for such election was 693,000, and that the bid of the George G. Renneker Company for printing the ballots was accepted by the election commissioners; that plaintiff furnished and delivered the ballots at the contract price of $6945.60. The abstract shows that the South Park Commissioners filed a plea of non-assumpsit, with an affidavit that it did not order the ballots or promise to pay for them; that they were ordered by a person other than the South Park Commissioners, and that under the law the obligation to pay for the ballots was upon persons

other than the South Park Commissioners; that the law provides the manner of furnishing ballots at elections and who shall pay for them.

We understand from the briefs and the Appellate Court opinion, though it is not shown by the abstract, that the city of Chicago and the board of election commissioners demurred to the declaration, which demurrers were sustained and the city and board were dismissed as defendants in the case. The evidence was heard before the court, and at its conclusion the South Park Commissioners moved the court to instruct the jury to find the issues in its favor. The court denied the motion and rendered judgment against the South Park Commissioners, and the park commissioners appealed to the Appellate Court. That court held the contract for the ballots was made by the election commissioners pursuant to their duty under the law, the expense of which was chargeable, under the law, to the city. The court held specifically that the park commissioners were not liable for the printing of the ballots either under the contract or the law, and reversed the judgment of the circuit court.

The South Park Commissioners has jurisdiction over one of the large park areas in the city of Chicago. It filed with the election commissioners a certified copy of the resolution passed by it requesting the election commissioners to prepare for and conduct the bond issue election on November 4, 1924, which was also the date of the general election for national, State and county officers.

Defendant in error contends that the obligation to pay for the ballots on the bond issue was fixed by contract between the George G. Renneker Company and the election commissioners; that plaintiff in error predicated its action in both pleading and proof on the agreement of the election commissioners to pay for printing the ballots, and can not now depart from that theory and claim the park commissioners are liable for plaintiff in error's claim. Defend-

ant in error further contends that the cost of printing the ballots and the expenses incurred by the election commissioners are required by law to be paid by the city of Chicago; also, that the election on November 4, 1924, was not an election for a member of the park board or for voting upon a proposition submitted by such board, "and for no other purpose," within the meaning of the City Election law.

The facts are not in dispute. The election commissioners called for a bid not only for ballots to be voted on the bond issue question, but for ballots to be voted throughout the entire city of Chicago. The city of Chicago adopted the law providing for election commissioners, and paragraph 358 (Cahill's Stat. 1927, chap. 46, p. 1162,) provides that all expenses incurred by the election commissioners shall be paid by the city adopting that act. The last part of paragraph 362 provides: "At all elections held for the purpose of electing a member of a park board or school board, or for purpose of voting upon a proposition or propositions submitted by such board and for no other purpose, such board shall pay the expenses of such election." The liability for printing the ballots does not arise out of a contract but is fixed by law. The election commissioners in no case can be held liable for the expenses incurred in preparing for and conducting elections. Said commissioners have no money or property, and no authority is conferred upon them to raise money to pay the expenses of an election. By paragraph 358 of the act the city is liable for the expenses incurred for holding all general elections, but paragraph 362 makes the park board liable for the expenses of preparing for and holding an election "upon a proposition or propositions submitted by such board and for no other purpose."

It is contended by defendant in error that the election on the proposition of issuing bonds by the park board was not an election "upon a proposition or propositions submitted by such board and for no other purpose," within the mean-

ing of the City Election act. This contention is based upon the proposition that at the same time the election was held on the bond issue by the park board a general election was held throughout the city of Chicago for the election of State and county officers. It is argued the park commissioners are only liable for the expenses of an election at an election at which the only thing voted upon is a park question. We think this is a misapprehension of the meaning of the statute. The election on the proposition of issuing bonds by the park commissioners concerned only the territory within their jurisdiction. The proposition of issuing the bonds was submitted by the park commissioners to be voted upon, and the expense of the ballots would not have been incurred but for the election to vote upon that proposition. The other expenses of holding the election on November 4 were not chargeable to or payable by the park commissioners. The fact that the election upon the question of issuing bonds by the park commissioners was called and held the same day as the general election does not change the character of the election as to the bond issue. Upon that question the election was a special election. (*People* v. *Czarnecki,* 312 Ill. 271; *People* v. *Brown,* 189 id. 619.) The park bond issue election was a special election for the purpose of voting on one question only, notwithstanding it was held at the same time the general election was held, and paragraph 362 of the statute provides that the park board "shall pay the expenses of such election."

We do not think *Bolles* v. *Prince,* 250 Ill. 36, relied on by defendant in error and by the Appellate Court, is in point on the question involved in this case. In that case the city of Danville adopted the act providing for election commissioners. The city included part of the town of Danville, and the expenses of registration and conducting an election in that part of the city within the town of Danville were presented to the board of town auditors for payment. The expenses included compensation of judges and clerks,

rent of polling places, and printing. The board of town auditors refused to pay, and a petition for *mandamus* was filed to compel the board to pay. A demurrer was filed to the petition and sustained by the trial court, and an appeal was then prosecuted to this court. The judgment was reversed and the cause remanded, with directions, by this court. The opinion of this court is in part as follows: "The legislature having control of the funds of the township was authorized to require the payment of the expenses of the township election by the township. The cost of the election is greater because of the larger and denser population of the city. The city received the benefit of the registration in the city election and the county also will be benefited by it. The legislature had the authority to make an apportionment of the cost among the county, the city and the township and require each to bear its portion. Article 7 of the act is devoted to this purpose. The county is required to pay the salaries of the election commissioners and chief clerks. The city is required to pay all expenses incurred by the board of election commissioners. The judges and clerks of election are directed to be allowed and paid five dollars a day in all city elections by the city; in State and county elections by the county. From what source the judges and clerks of a township election are to receive their pay is not expressly declared. It was not expressly declared either before or after the enactment of the City Election act. Before that act the judges and clerks of State and county elections were directed to be paid out of the county treasury. (Rev. Stat. 1874, chap. 46, sec. 75.) Though it was not expressly so provided, the judges and clerks of township elections have uniformly received their pay, at the rate provided by the general Election law, from the township—the municipality to which they rendered service. The City Election act has declared that the judges and clerks of election shall be paid. It has fixed the amount of their compensation. They are essential to the conduct of a town-

ship election. In the absence of any other provision of law the township is under obligation to pay them. The township is not, however, liable for the rent of the places of holding the election or the printing and miscellaneous expenses. These were expenses incurred by the commissioners required to be paid by the city. Nor is the township liable for the compensation of the judges and clerks of election when township officers are elected at a city election, for it is expressly provided by section 4 of article 7 of the act that the city shall pay their compensation in such case." The election in that case was not a special election but was a regular or general election.

*Johnson* v. *County of Winnebago,* 256 Ill. 276, was a special primary election held in the seventeenth judicial circuit, which included the county of Winnebago. The controversy in that case was whether the county of Winnebago was liable for expenses incurred by the election commissioners of the city of Rockford. Johnson, the plaintiff, brought suit against Winnebago county for $20 for work and labor done by him at the request of the election commissioners in delivering booths to the various polling places, also ballot-boxes, guard-rails, and other articles necessary for the conduct of the election. The court cited the *Bolles case, supra,* and held the expenses sued for were a liability of the city of Rockford.

The cases cited can have no bearing upon the question here involved, as the election and the supplies therefor were ordered by the election commissioners at the request of the park board for the purpose of voting on the proposition of issuing $3,000,000 of bonds by the park board. The statute requires the expenses of holding such election shall be paid by the park commissioners. It is true, the action was brought against the park commissioners, the city of Chicago and the election commissioners. The two latter named defendants were dismissed out of the case on demurrers and judgment was rendered against the park commissioners.

The declaration alleged the ballots and specimen ballots were ordered by the election commissioners and that the three defendants named became liable to pay the plaintiff for the same. No liability of the election commissioners could arise by reason of expenses incurred by them in holding an election. If the election is a general election then the expenses incurred by the election commissioners are payable by the city, but the election on the bond question having been held pursuant to a resolution of the park commissioners the statute makes them liable for the expenses here involved.

The judgment of the Appellate Court is reversed and the judgment of the circuit court is affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of circuit court affirmed.*