(No. 29899.-

FRANK J. BILEK *et al.*, Appellants, *vs.* THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed January 22, 1947—Rehearing denied March 19, 1947.*

COBBEY & BRUSSELL, (ABRAHAM W. BRUSSELL, of counsel,) both of Chicago, for appellants.

BARNET HODES, Corporation Counsel, (JOSEPH F. GROSSMAN, and HERMAN SMITH, of counsel,) all of Chicago, for appellees the City of Chicago *et al.*; WILLIAM J. TUOHY, State's Attorney, (JACOB SHAMBERG, and GORDON B. NASH, of counsel,) all of Chicago, for appellees the County of Cook *et al.*

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

An election was held in Cook county Monday, June 3, 1946, for six judges for full terms, and for one judge to fill a vacancy, all in the superior court. On the same day an election was held upon six different propositions for issuing city bonds, and one proposition for the issuance of county bonds was submitted to the voters within the city. One proposition within the city was for the issuance of bonds under "An ordinance authorizing the issuance of

$42,000,000 Superhighway Bonds of the City of Chicago, and providing for the levy of taxes for payment thereof." The five other city bond projects totaled $73,606,000 and in varying amounts were for: (1) improving sewers; (2) establishing playgrounds; (3) improvement of streets and alleys; (4) city repair shops; (5) city lighting. It will not be necessary to further consider these five propositions, as the determination of their validity will depend upon the action we take upon the superhighway bonds.

At the same time, within the city precincts controlled by the board of election commissioners of the city of Chicago, an election was held on the proposition of issuing $70,000,000 of county bonds for the purpose of building roads. The notice of this election, and for the city bonds and other projects, was given by the board of election commissioners of the city of Chicago and *ex-officio* of the cities of Chicago Heights, Berwyn and Harvey, the town of Cicero, and the Villages of Summit, Stickney, Morton Grove, Elmwood Park and Skokie. Other propositions, not material to this discussion, were included.

On the same day an election was held in all of Cook county, including cities, towns and villages under the jurisdiction of the county clerk of Cook county, for the purpose of electing the judges of the superior court, as above mentioned, and for submitting to the voters of Cook county a proposition for issuing $70,000,000 in county bonds for the purpose of building roads. This notice was signed by Michael J. Flynn, county clerk of Cook county.

From the above, it will be observed that for the $70,000,000 bond issue for the county the notice of election consisted of that given by the election commissioners for those bodies within the county who were under the jurisdiction of the board of election commissioners, and by the county clerk for that part of the county not operating under the board of election commissioners.

At the election all of the bond propositions carried, and the complaint in this case was filed in the circuit court of Cook county by plaintiffs, taxpayers, as a representative suit upon the theory all of the said bonds are void for the reasons set out later, and prayed for an injunction against the officers of the several municipalities, and of the county, to restrain them from taking any action towards issuing, executing, and certifying any of the said bonds issued by the several bodies, to declare such bonds void, and for general relief. Separate motions to strike the complaint were made by the county of Cook and by the city of Chicago. These motions were granted, and a decree was entered that the complaint be dismissed and that the plaintiffs take nothing by their suit. The plaintiffs elected to stand by their complaint and appealed directly to this court. The circuit court certified that there was involved in said cause, and in the final decree, the validity of the ordinances of the city of Chicago and of the county of Cook, and that public interest required that an appeal should be taken directly to this court.

The above is a general outline of the proceeding as it took place, and additional facts stated in the complaint, or contained in the stipulation of facts, will be referred to when necessary, as applying to each point raised by the respective parties.

The points raised for reversal may be included within the following: (a) The election was void because it was called and held at the same time as a judicial election; (b) that the notice of election was insufficient; (c) that voting upon seven propositions within the city rendered both city and county elections void; (d) that the will of the people was not expressed in the county election; (e) that if the notices were given within the time fixed by statute they were insufficient in that they did not specify the amount of interest and failed in other details claimed

to be necessary to make a legal notice. Some of the objections urged apply to both city and county, and some affect only one municipality. The appellees affected will be indicated as we proceed.

Preliminary to discussing the legal issues it is perhaps advisable to call attention to the statutes involved in the superhighway bond issues. What is commonly designated as superhighways are those highways built or authorized under the act of July 9, 1943. (Ill. Rev. Stat. 1945, chap. 121, pars. 314a to 314a25 incl.). In that act the word "superhighway" is declared to mean "durable, hard-surfaced, reinforced multiple lane highways, so constructed and designed as to eliminate intersection at grade with any street, public road, thoroughfare, highway, railroad or street railroad, except at points of access to said multiple lane highway, together with any grade separations, bridges, viaducts, underpasses, tunnels or ferries thereupon." Par. 314a1.

Among other things, this act provides that revenue bonds may be issued and paid, or refunded, from the tolls authorized to be collected by the superhighway commission provided for in said act. The bonds in the sum of $42,000,000 voted upon by the city of Chicago give a different definition to superhighways, as pointed out above, but in reality are for the improvement of streets, alleys and thoroughfares connecting with a superhighway. The resolution upon the part of the county commissioners recites that the $70,000,000 bond issue is to be used on State-aid roads, which are authorized by the statute relating to roads and bridges. (Ill. Rev. Stat. 1945, chap. 121, par. 19.) The resolution describes a State-aid road, presumably the same as the superhighways, and that it will require a tax of nine cents on each $100 in excess of the statutory limits. No question is raised as to the power to issue bonds for each such purpose, but these different

acts must be kept in mind in discussing the points raised against the legality of the bond issues.

The first point discussed is that the elections by which the bond issues were authorized are void because the elections were held at the same time as that of the judicial election, in which seven superior court judges were voted upon. There is no statute which prohibits this from being done. Undoubtedly it was the intention of the framers of the constitution that judicial elections should be conducted at different times from elections involving political questions, for section 6 of article VI of the constitution makes provision for holding a judicial election on the first Monday in June for the election of judges of the Supreme Court. Elections of judges of the circuit courts, and, by statute, of judges of the superior courts, are held at a like time. Section 3 of article V requires that the election of the executive officers of the State shall be held on the Tuesday next after the first Monday of November every four years. Section 2 of article IV provides that the election for members of the General Assembly shall be held on Tuesday next after the first Monday in November of each year for which members are to be elected.

The constitutional provisions would necessarily apply only to the election for the offices specified therein, but not necessarily other elections. This view is fortified by section 7 of the schedule to the constitution of 1870, which provided for the election of four members of the Supreme Court on the same day the constitution was submitted to the people for ratification.

A number of statutes exist in which the General Assembly has provided for an election on the same date as a judicial election. (Metropolitan Transit Authority Act, Ill. Rev. Stat. 1945, chap. 111⅔, par. 301 *et seq.*) We held this act valid in *People* v. *Chicago Transit Authority,* 392 Ill. 77. And also, the statute provides that the chief

justice and associate justices of the municipal court shall be elected at the same time and place as the election of State and county officers. Ill. Rev. Stat. 1945, chap. 37, par. 364.

The public policy of the State or of the nation is to be found in its constitution and its statutes, and when cases arise concerning matters upon which they are silent, then in its judicial decisions and the constant practice of the government officials. (*Groome* v. *Freyn Engineering Co.* 374 Ill. 113; *Zeigler* v. *Illinois Trust and Savings Bank,* 245 Ill. 180.) It has otherwise been said the public policy of a State or nation must be determined by its constitution, laws and judicial decisions,—not by the varying opinions of laymen, lawyers or judges as to the demands of the interests of the public.

There is nothing in the constitution which declares an election to authorize bonds on the day of a judicial election renders them void. The General Assembly has seen fit to authorize elections other than those fixed in the constitution, to be held upon the day of a judicial election; and the constitution itself authorized voting for its ratification and the election of judges upon the same day. There are no decisions in Illinois holding to the contrary, and it seems clear therefore that there is nothing in the law which declares a public policy to exist which would render the authorization of the bonds in this case void because the election was held upon the same day that seven judges of the superior court were elected.

It is also said it was illegal to submit the several special propositions for bonds at one election. Counsel for appellants say they do not claim there is any legislative prohibition against such a number of propositions being submitted but indicate the statute discloses that there is such a public policy, and refer us to the statute, section 28-1 of the Election Code, which prohibits the submission of more than three public-policy questions at the same elec-

tion. The public-policy questions mentioned in this statute are those which are submitted upon the petition of twenty-five per cent of the registered voters of any incorporated town, village, city, township, county or school district, or of ten per cent of the registered voters of the State. We cannot extend the law to cover a type of proposition not described in the statute, and therefore find no statutory prohibition of, nor any statutory exception to, the power of the city or county to submit as many bond-issue propositions to a vote as they may see fit.

The principal argument made to invalidate the bonds of the city and of the county, which were voted in aid of the superhighways, grows out of the notice of the election that was given by the respective authorities of the city and county. We will discuss this question first as it relates to the city of Chicago. The statute provides: "No ordinance passed by the corporate authorities of any municipality, which provides for or authorizes the issuance of bonds shall be effective until the ordinance has been submitted to the electors of that municipality at the next succeeding general State or municipal election, or at any special election called for that purpose, and approved by a majority of the electors, voting upon that question." Ill. Rev. Stat. 1945, chap. 24, sec. 17-1.

One of the questions argued under this head is whether the election was a *general* election or a *special* election. The materiality of this argument lies in the fact that many defects of a general election may occur without invalidating it, when the same objections made to a special election might have the opposite effect. A great many authorities have been cited by counsel upon this point, which we do not regard as convincing because the statute on elections specifically defines these terms.

In the Election Code (Ill. Rev. Stat. 1945, chap. 46, par. 1-3, subpar. 3,) a special election is defined as follows: " 'Special election' means an election, either general or mu-

nicipal, not regularly recurring at fixed intervals, irrespective of whether it is held at the same time and place and by the same election officers as a regular election." Subparagraph 4 provides: " 'General election' means a regular election for the choice of a national, state, judicial, district or county officer." Subparagraph 1 provides " 'Election' includes the submission of all questions of public policy, propositions, and all measures submitted to popular vote, and includes primary elections when so indicated by the context."

The election for the proposition of city bonds, as stated above, may·be held at a "general State or municipal election, or at any special election called for that purpose." The election in this instance was upon a proposition to vote bonds, and was one "not regularly recurring at fixed intervals." Under these statutory definitions the election for bonds by the city of Chicago was a special election. The same rule was adopted in *Renneker Co.* v. *South Park Comrs,* 332 Ill. 393, where there was an election for issuing bonds by the park commissioners, held on the same day as a general election. We there specifically held that upon the question of bonds the election was a special election. This would seem to settle the proposition that the election was special and not general.

We now come to the notice of election by the city. Chicago has adopted the act providing for a board of election commissioners. The Election Code provides: "In any city, village or incorporated town operating under article 6 of this Act [providing for election commissioners] the Board of Election Commissioners shall give timely notice through the press of the time and place of election in each precinct of such city, village or incorporated town." (Ill. Rev. Stat. 1945, chap. 46, par. 12-3.) The notice of this election was dated April 25, 1946, and was published in the *Chicago Daily News* on May 2, 1946, which was thirty-two days before the election held on June 3,

1946. There seems to be no question raised as to the timeliness of the notice of election. It is argued that notice under section 12-3 of the Election Code is ineffective because it failed to give the time and place of the election in each precinct in the city. The form of notice required in a general election is described and set out in section 12-1 of the Election Code. The form of a notice for a special election is not prescribed, so resort must be had to the rule prevailing in such cases. It is said to be a fundamental rule that the notice for special elections may be general, and it is not required to contain more than required by statute.

In *People* v. *Sisson,* 98 Ill. 335, the question of the insufficiency of the notice of election for certain school bonds was involved. The statute provided that the notice should contain "the question or questions to be voted on." In holding the notice sufficient, we said: "This is very general,—it does not require that any particular site should be named in the notice, or that it should state the amount to be borrowed, or that but a single question should be submitted at any one election. * * * The statute requiring nothing more than that the notice should specify the question or questions to be voted on, we deem it as in substantial compliance with the statute, and sufficient." In that case the notice was given "for the purpose of voting for a school house site, for a schoolhouse for" a certain district; and also, "for the purpose of voting for or against issuing bonds to erect or purchase a school house for said district." The public is bound to be aware of the provisions of the law in cases where elections are conducted by the board of election commissioners. The law provides, and it has been held, that the conduct of such elections is under the exclusive jurisdiction of the election commissioners. The law requires them to divide the territory over which they have jurisdiction into precincts containing approximately five hundred legal voters, to post and publish where polling places are located, and to do many other

things which will apprise every voter in the precinct where and how any election under the authority of the election commissioners will be had. This renders it unnecessary to name the place or location upon the notice of election. (*Village of Averyville* v. *City of Peoria,* 335 Ill. 106.) We hold that a more particular description of the place or location was not required.

It also appears from the record that on April 20, 1946, a notice was given by the city clerk of Chicago that special elections would be held for the approval of all of the ordinances mentioned for the issuance of bonds on the several projects, and that the day of election was June 3, 1946, and the ordinances in full were each printed in the *Chicago Journal of Commerce,* published in the city of Chicago. This notice set out every ordinance and the principal amount of the levy for each year, the amount of interest for each year, and the total amount to be collected each year on each separate bond issue, and contained also the form of the ballot to be used in such election for bonds. This notice by the city clerk was doubtless given by reason of the provisions of section 9-3, of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1945, chap. 24, par. 9-3,) as follows: "The corporate authorities shall (1) designate the place or places in which municipal elections will be held, (2) appoint the judges and clerks thereof, and (3) publish a notice in a newspaper published in the municipality or, if there is none, post a notice at each voting place in the municipality." A municipal election means "an election or primary, either regular or special, in cities, villages, * * * irrespective of whether such election is held at the same time and place and by the same election officers as a general election." Ill. Rev. Stat. 1945, chap. 46, par. 1-3, subpar. 5.

The act authorizing elections to be conducted by the board of election commissioners also provides that all laws in conflict with it shall no longer be applicable, "But all

laws or parts of laws not inconsistent with the provisions of said Articles and sections shall continue in force and be applicable to any such city, village or incorporated town, the same as if said Articles and sections had not been adopted." (Ill. Rev. Stat. 1945, chap. 46, par. 6-16.) This section appeared in the old law and was sustained in *Fields v. Lueders,* 274 Ill. 562.

Appellants also contend that section 17-1 of the Revised Cities and Villages Act is repugnant to section 34 of article IV of the constitution. The constitutional provision as to the city of Chicago provides, among other things, that no bonded indebtedness shall be incurred unless the proposition shall be consented to "by a majority of the *legal voters* of said city voting on the question;" and it is contended that since section 17-1 of the Revised Cities and Villages Act varies slightly from such constitutional provision, in that it provides that the issuance of bonds may be "submitted to the *electors* of that municipality," the latter provision is void, since it is contended that electors and legal voters are not necessarily the same. This contention is completely answered by the case of *Donovan v. Comerford,* 332 Ill. 230, in which we held that an elector is a qualified voter. Things equal to the same thing are equal to each other, and this point is, therefore, without merit.

From the foregoing, we conclude that an election within the city of Chicago to authorize the several bond issues was conducted by the board of election commissioners of said city; that it gave notice in the manner provided by law at the time and place required by law; that the notices were sufficient and of a character to render the election within the city legal and valid, and the bonds issued by authority thereof were valid.

A different situation is disclosed on the county bonds. There were two notices required to include all of the voters in the county. We have pointed out that the notice re-

quired by section 12-3 of the Election Code applies to those persons living within cities under the jurisdiction of the board of election commissioners. For elections not under the jurisdiction of the board of election commissioners a different type and form of notice is required. Section 12-1 of the Election Code provides that "at least thirty (30) days previous to any general election, and at least twenty (20) days previous to any special election, except in cases otherwise provided for, the county clerk shall publish a notice of such election in two or more newspapers printed and published in the county, city, village, incorporated town or towns, as the case may be, or, if there is no such newspaper, then in any two or more newspapers printed and published in the county and having a general circulation throughout the community." The form of the notice that may be given is then set out.

The county bonds proposed to be issued were under section 15d of the Roads and Bridges Act, authorizing counties to call an election at any general election, or at any special election which the county is authorized to call for such purpose. And this section also, as to the form and character of the notice to be given, provides: "If the question of an issue of such bonds is submitted to the people, notice of election shall be given and the election shall be held and the returns made, all in the manner now provided by the general election laws of this state." This makes section 12-1 of the Election Code the guide for giving the notice required for such a bond issue.

The notice given in this case was published on May 18, 1945, and the election held on June 3, and thus gave only fifteen days' notice where the statute requires a minimum of twenty days in case of a special election and thirty days in the case of a general election, and was published in one newspaper when the statute required it to be published in two. On the face of the record it appears the notice re-

quired by law was not given, and the statute in this respect disregarded, but the appellees say the notice is sufficient because the statute was, they claim, a directory one, and because it is not shown that the bond issue would not have carried had the notice been given as required by law.

As we have shown, the election in the case of the city bond issue was a special election. The county election also, for the same reasons, comes directly within the definition of a special election, and the fact that both the resolutions of the city and of the board of county commissioners authorizing the same recite that the bonds will be voted at a general election does not excuse a disregard of matters legally required to make the result of a special election valid. The election on the question of issuing bonds was a special election. *Campe* v. *Cermak,* 330 Ill. 463.

The only corporate body which can authorize an election for the issuance of Cook county bonds for State-aid roads is the board of county commissioners. It is not an election which comes within the definitions of "regular election," "general election," or "municipal election," contained in section 1-3 of the Election Code. It comes clearly within the definition of a "special election," and since it is called for the purpose of authorizing the people to vote upon a proposition which the county authorities, alone, are authorized to submit to them, the rules applying to the requirements of a special election should be followed.

We have had the question of the effect of failure to give proper notices of special elections before us many times. The first case in which the failure to give the requisite notices is discussed is *Harding* v. *Rockford, Rock Island and St. Louis Railroad Co.* 65 Ill. 90. There was a special election held for the voting of railroad bonds, which failed to give the thirty days' notice required by statute. The question the court recognized as for decision was whether the omission to give notice for thirty days

was fatal to the exercise of the power to issue bonds. Since this case has been cited many times, quotation from it is appropriate: "If any general or special statute which controlled the election required the publication or posting of a notice for 30 days prior to the holding of the election, and this was not done, then the election was invalid, and the expression of the will of the voters thus obtained conferred no power upon the board of supervisors either to make a subscription or to issue the bonds. Such municipalities were not created with a view to engage in commerce, or to aid in the construction of railways, but for governmental purposes only. When they exercise the functions given by the statutes under consideration, the powers granted must not only be clearly conferred but strictly pursued. If the mode prescribed for carrying into effect the right to issue bonds is not complied with in all material matter, then the bonds should not be issued; and thus the taxpayer will be exempt from the imposition of illegal taxes and a grievous burden upon his property."

In *Williams* v. *Town of Roberts,* 88 Ill. 11, bonds were voted by a town and held invalid because notices were posted for only ten days when the law required they be posted for twenty days, and we held that failure to comply with these provisions rendered the election a nullity. In that case we considered the problem was one of power, and that no power existed to issue bonds until there had been an election held for that purpose, called and conducted upon the notice of the time and place required by the statute for holding such an election.

The question came before us again in *People ex rel. Cairo and St. Louis Railroad Co.* v. *Board of Supervisors,* 92 Ill. 441, a case in which it was not shown that notices had been posted for the requisite period of time in a bond election, and we there held that while there is a presumption in general elections in favor of their validity, the pre-

sumption is the reverse in special elections, and on the proposition to incur indebtedness by a vote authorized by statute the rule is as follows: "When the power is conferred by a vote of the electors, the notice, to be effective, must be for the time required by the statute. The notice in such cases lies at the foundation of the delegation of the power to create the debt. If no notice is given, or for too short a period, the vote will confer no power, no matter how large the vote, even if unanimous." To the same effect is *Williams* v. *People ex rel. Wilson*, 132 Ill. 574.

The effect of want of notice upon the validity of an election voting indebtedness at a special election, or for the creation of a taxing body, or that places a tax burden upon the inhabitants of a district, has been declared many times. In *Roberts* v. *Eyman*, 304 Ill. 413, the authorities above were approved and followed. This case was followed in *People ex rel. Mark* v. *Hartquist*, 311 Ill. 127, and *People ex rel. Reich* v. *McCoy*, 387 Ill. 288. These last three cases involved the legality of high-school districts, where the notice required had not been given. The language of the *Roberts case*, we think, applies here: "The election provided for is a special election, since there is no general law providing for it and fixing the time when it shall be held, and in such a case if notice is not given as required for the length of time and by the number of notices required by the statute, the election will be void and an expression of the will of the voters thus obtained will confer no authority to issue bonds or expend money."

From the foregoing it appears that a special election was held in the part of the county outside the territory of the cities which were under the election commissioners, and that the notice required by statute for election in such cases was not given. This brings us to the contention of appellees that the time fixed by the statute is merely direc-

tory, and that the voters had sufficient notice to act upon the election, and therefore special injury must be shown to invalidate the election.

Great reliance is placed upon the case of *Fiedler* v. *Sanitary District,* 359 Ill. 221. In that case a sanitary district passed a resolution for the holding of an election to issue bonds. It was provided there should be twenty days' notice of the election published in a newspaper, and also that a notice should be posted in each precinct for the same period of time. The newspaper notice was published more than twenty days in advance of the election, and notices were posted in all of the precincts, except one precinct containing forty votes, and that was posted twenty-four days before the election, but after an ordinance had been passed correcting the failure to create a precinct located in the disputed territory. From the facts, it may be seen that the required notices were given both by publication and by posting in all of the precincts more than twenty days before the election. When the case is carefully read, it is found to hold that the irregularity in that particular case consisted in not having one precinct defined before the election was called, but this was corrected more than twenty days before the election and the voters of all the districts were given notice, both published and posted, for the requisite length of time before the election.

The *Hartquist* and *Roberts cases* were both referred to and approved on the proposition that lack of notice, where it is jurisdictional, invalidates an election. The reference to the cases mentioned therein does not contravene the rule. *Natural Products Co.* v. *County of DuPage,* 314 Ill. 74, was a case of irregularity. It involved voting bonds for State-aid roads, and the notice of election was given more than the twenty days required, but the election itself was not held within the hours designated by law. This was held to be an irregularity. The other case cited,

*People ex rel. Comerford* v. *Miller,* 314 Ill. 474, was one where a circuit judge had been elected at a special election not called by the Governor. In this case, we held calling such an election by the Governor was one of the requisites, and the election so held was declared void, notwithstanding the candidate had no opposition and more than 100,000 votes were cast.

While there is some general language used in the *Fiedler case* which might give justification for the contention of appellees, after being carefully examined it will be found the election involved was properly called and proper notice given, but irregularities in the conduct of it were held not sufficient to hold the election void. The distinction between the *Fiedler case* and the present one is that in the former the notices necessary to hold a valid election were given, but the election itself was conducted in a manner that did not comply with all of the requirements of the law. An irregularity in the conduct of an election is not sufficient to vitiate it; (*Weston* v. *Markgraf,* 328 Ill. 576; *People* v. *City of Paris,* 380 Ill. 503; *Patterson* v. *Crowe,* 385 Ill. 514,) but a failure to perform a mandatory duty is different. *Wood* v. *Hartman,* 381 Ill. 474; *Tuthill* v. *Rendelman,* 387 Ill. 321; *Sibley* v. *Staiger,* 347 Ill. 288.

The appellees also make a suggestion that the notice is reasonably timely. The statutory provision for "timely" notice refers to territory over which the board of election commissioners has jurisdiction, but the requirement of notice for counties is fixed at thirty days for any general election and twenty days previous to any special election, (section 12-1 of the Election Code,) and, since the method of notice is fixed by the statute, it is unnecessary to consider the comparative efficiency of giving notice by publication and giving notice as required by law.

Our attention is also called to a number of cases holding that where notice by publication is required, one pub-

lication is all that is necessary to comply with the law, and that it is not necessary to publish the notices on successive days. That question is not involved here. It is not the *number of publications,* but the *number of days* of publication that is involved. And further, section 12-1 of the Election Code requires notice of the election shall be published in two or more newspapers. The question involved does not have reference merely to a publication, but involves the facts that publication was not made in two newspapers, and that the publication was not made for the requisite time.

The appellees analyze the different classes of cases cited by appellants, and contend that this case does not fall within any of them. The first class they distinguish by saying that in those cases the official record failed to disclose any notice had been given. We do not think there is a distinction between a case where the record fails to disclose the proper notices were given and a case where a record discloses there was a failure to give notices as required by law.

The second class of cases they discuss is that where posting was required but was not made for the requisite number of days. These cases have been noted in this opinion. They do so hold, but what appellees fail to concede is that they apply to the issuance of the county bonds in this case.

The third classification is substantially the same as the first, but appellees fail to note that in *People ex rel. Reich* v. *McCoy,* 387 Ill. 288, it was held that when the law requires notice it refers to legal notice, and insufficient notice is not legal notice. The fourth class to which they refer is that involving timely notice. That is not involved in this case because the statute specifying timely notice does not apply to authorizing bonds by the county.

A number of other points are raised questioning the legality of the election for the issuance of the county bonds

which it is not now necessary to discuss, because, plainly, the bonds purported to be authorized at a special election, and the notice of election necessary for a legal grant of power to issue such bonds was not given for that portion of Cook county not under the jurisdiction of the board of election commissioners. Appellees contend, however, that, assuming the notices are held insufficient, still it has not been shown that the election for county bonds would not nevertheless have carried, if this territory had received no notice. This, in our opinion, is equivalent to saying that where, within a county, there is a city which contains a great majority of the voters, if the notice be proper for the election carried on in the city, improper notice, or no notice given for the county outside of the city will not invalidate the election. To this we cannot subscribe. However, in passing we mention that appellants claim that approximately 15,000 persons under the jurisdiction of the county clerk voted in this election. This seems to be conceded by appellees. The county road bond issue carried by 22,000 votes. There were 303,518 registered voters in the territory under the jurisdiction of the county clerk, certainly ample in number to have overcome the total majority of 22,000 had they gone to the polls and voted.

No presumption of legality aids a special election, and the burden is upon those calling it to prove it legal. (*Southworth* v. *Board of Education,* 238 Ill. 190; *Thatcher* v. *People ex rel. McCrea,* 93 Ill. 240.) It is speculative to say how these citizens would have voted, but at any rate they were entitled to a legal notice to enable them to vote upon a proposition of such vital interest to all of the taxpayers in Cook county. In the *Thatcher case* we said: "It is fair to assume that many remained away and refrained from voting who would have been present and voted had they been notified an election would be had on these questions. The want of notice goes to the existence

of the power (and not merely its defective execution,) to issue the bonds."

No reason is shown why the notices of election necessary to grant the power to issue road bonds were not given in apt time, since the resolution of the county commissioners was adopted April 18, 1945, the notice dated May 4, 1945, and the publication May 18, 1945. The corporate authorities thus recognized the necessity of statutory notice, but, since it was not given, the bonds of Cook county for road purposes were not legally authorized.

The decree of the circuit court of Cook county is affirmed as to the appellee the city of Chicago, and reversed as to the appellee the county of Cook. The costs shall be apportioned equally between the appellees and appellants.

*Affirmed in part, and reversed in part.*